IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:3:15-cv-655-WKW-WC |
| | ) | |
| AUBURN BANK, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court on Plaintiff's Complaint (Doc. 1), Defendant's "Motion to Dismiss"[1] (Doc. 5), and Plaintiff's Response to Defendant's Motion to Dismiss (Doc. 14).  Plaintiff's complaint alleges that she was "discriminated against by certain acts" while she worked as a teller for Defendant.  Compl. (Doc. 1) at 3.  These acts include: termination while on the Family Medical Leave Act ("FMLA"), being constructively discharged due to a hostile work environment, and receiving abuse from other employees in the form of cursing, rude, and unwanted conversations.  *Id*. at 3-4.  In addition, Plaintiff alleges that she was treated differently than other Caucasian employees.  *Id*.  In support of her disparate treatment allegations, Plaintiff states that she was verbally reprimanded for talking about President Obama while her Caucasian co-workers were allowed to freely discuss politics.  *Id*. at 3.  She states that she was reprimanded for humming while her Caucasian co-workers were allowed to "shoot

---

[1] Defendant's motion is titled "Motion to Dismiss."  However, in addition to requesting that the court dismiss Plaintiff's claims, Defendant requests, in the alternative, that the court require Plaintiff to file a more definite statement.

rubber bands around, cut coupons out of books, playing [sic], reading books or sleeping." *Id*.  Plaintiff asserts that she was required to submit doctor's excuses for work absences while her Caucasian co-workers were not.  *Id*.  She also states that she was "forced to a different location without any adjusted compensation while other Caucasian workers remained at her previous employment location."  *Id*.  Plaintiff purports to bring her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*; 42 U.S.C. § 1981; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*,; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

Defendant argues that Plaintiff's Title VII and ADA claims should be dismissed as time-barred, and that the remainder of Plaintiff's claims should be dismissed for failure to meet the requirements of Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Def.'s Mot. (Doc. 5).  In the alternative, Defendant requests that the court require Plaintiff to file a more definite statement of her claims.  *Id.* at 13.

For the reasons that follow, the undersigned RECOMMENDS that Defendant's Motion to Dismiss (Doc. 5) be GRANTED, dismissing Plaintiff's claims in their entirety.

## DISCUSSION

### I.   Plaintiff's Title VII and ADA claims are time-barred.

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination in February 2014, alleging that she was discriminated against based on race, disability, and retaliation.  Pl.'s Ex. (Doc. 1-1) at 2.  The EEOC issued to Plaintiff a "Dismissal and Notice of Rights" ("Dismissal") stating that the EEOC was closing its file on Plaintiff's charge.  *Id.* at 1.  Plaintiff attached that Dismissal to her complaint to this

court, along with the envelope purported to contain the Dismissal.  *Id*. at 1, 4.  Postmark on the envelope indicates that the Dismissal was mailed on June 2, 2015, and a handwritten note below the postmark indicates that Plaintiff opened the Dismissal on June 12, 2015.[2]  *Id*. at 4.  Based on these facts, Plaintiff asserts that her Title VII and ADA claims were brought "within the allowed time frame" for such violations.  Compl. (Doc. 1) at 3.  Defendant disagrees, arguing that Plaintiff's Title VII and ADA claims are time barred.  Def.'s Mot. (Doc. 5) at 2-3.

To bring suit under Title VII or the ADA,[3] a plaintiff must file a civil action *within ninety days* of the receipt of the EEOC's final decision on an appeal.[4]  42 U.S.C. § 2000e-5(f)(1) (if a charge filed with the Commission . . . is dismissed by the Commission . . . , [the Commission] shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . .); *O'Donnell v. Punta Gorda HMA, LLC,* No. 2:10-cv-785-FtM-29SPC, 2011 WL 3168144, at *2 (M.D. Fla. Jul. 27, 2011) ("Under the Americans with Disabilities Act [ ] and Title VII, a plaintiff must bring a suit within 90 days of receiving a right-to-sue letter from the EEOC . . . .").

---

[2] The handwritten note stated: "Open on the [sic] June 12, 15."  Pl.'s Ex. (Doc. 1-1) at 4.

[3] "The ADA specifically incorporates the procedural provisions of Title VII . . . and [, t]herefore an aggrieved party must file an action in federal court no later than 90 days after receiving a right to sue letter."  *Strickland v. Wayne Farms-Southland Hatchery*, 132 F. Supp. 2d 1331, 1332 (M.D. Ala. 2001) (citing 42 U.S.C. §§ 2000e-5(f)(1) & 12117(a).

[4] If there has been no final decision by the EEOC, a plaintiff must file a civil action within 180 days after filing the EEOC appeal.  42 U.S.C. § 2000e-5(f)(1).  An EEOC decision gives notice of final action if it provides "unambiguous notice that the EEOC has terminated its administrative processing of the charge." *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 245 (5th Cir.1980).  Plaintiff does not argue that the EEOC failed to give her unambiguous notice that her charge was terminated; thus, the timeliness of Plaintiff's filing is judged by the 90 day requirement alone.

When the aggrieved party knows [the] EEOC has completed its efforts, the time for suit has come and the statute fixes its season as 90 days." *Zambuto v. Am. Tel. & Tel. Co.,* 544 F.2d 1333, 1335 (5th Cir.1977).

Filing within the ninety-day period is a condition precedent subject to equitable tolling or waiver, rather than a jurisdictional bar. *Fouche v. Jekyll Island-State Park Auth.,* 713 F.2d 1518, 1525-26 (11th Cir. 1983). Once a defendant contests the timeliness of the filing of the complaint, the plaintiff bears the burden of establishing that she timely filed her complaint. *Green v. Union Foundry Co.,* 281 F.3d 1229, 1234 (11th Cir. 2002). Likewise, the plaintiff bears the burden of proving that equitable tolling is appropriate. *Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 661 (11th Cir. 1993). The Eleventh Circuit has recognized three distinct situations in which the limitation period may be equitably tolled: (1) during the pendency of an action against the same parties and involving the same cause of action in a state court which had jurisdiction over the subject matter of the suit but was the wrong forum under state law; (2) when the defendant concealed facts that support the plaintiff's cause of action, until such time as the plaintiff knew or should have known of these facts; and (3) when the EEOC misleads a complainant about the nature of her rights. *Jones v. Wynne*, 266 F. App'x 903, 906 (11th Cir. 2008) (citing *Chappell v. Emco Mach. Works Co.,* 601 F.2d 1295, 1302-03 (5th Cir. 1979)); *see also Mesidor v. Waste Mgmt., Inc. of Florida*, 606 Fed. App'x 934, 936 (11th Cir. 2015). Equitable tolling "is an extraordinary remedy which should be extended only sparingly." *Bost v. Fed. Express Corp*., 372 F.3d 1233, 1242 (11th Cir. 2004).

4

Here, the EEOC gave Plaintiff notice that it had terminated its administrative process of Plaintiff's charge with its Dismissal. *See* (Doc. 1-1) at 1. That letter was purportedly mailed to Plaintiff on June 2, 2015, and was received by Plaintiff on June 12, 2015. *Id.* at. 1, 4. Thus, Plaintiff had *ninety* days from June 12, 2015, at most, to bring her Title VII and ADA claims to this court. Unfortunately for Plaintiff, Plaintiff filed her complaint on September 12, 2015, which was *ninety-two* days later. *See* (Doc. 1).

Because Defendant raised the timeliness of Plaintiff's appeal in its motion to dismiss, Plaintiff bears the burden of establishing that her complaint was timely. *See Green*, 281 F.3d at 1234. In this case, because Plaintiff's complaint was clearly filed outside of the ninety-day window, Plaintiff must show that equitable tolling is appropriate. *See Ross*, 980 F.2d at 661. In order to do so, Plaintiff must show extraordinary circumstances such as fraud, misinformation, or deliberate concealment. *Mesidor*, 606 Fed. App'x at 936 (11th Cir. 2015) (citing *Jackson v. Astrue*, 506 F.3d 1349, 1355 (11th Cir. 2007).

Plaintiff presents several arguments for why tolling is appropriate. First, Plaintiff argues that tolling should apply because Plaintiff's counsel did not discover that the Middle District of Alabama "was not equipped for online filing for the initial complaint" until September 10, 2015, when Plaintiff's counsel attempted to file the complaint online. Pl.'s Resp. (Doc. 14) at 1-2. Plaintiff then asserts that Plaintiff's counsel "had conflicts the following day [September 11, 2015] that would not allow his arrival in Montgomery until after nightfall" and that Plaintiff's counsel "felt it an uncomfortable situation to be attempting to file anything during the non-daylight hours" since he was unfamiliar with

5

the area.  *Id.* at 2.  Thus, Plaintiff's counsel waited until September 12, 2015, "when the

sun was still shining," to find the courthouse and file the complaint.  *Id.*

Second, Plaintiff argues that tolling is appropriate because Plaintiff's counsel had

an unexpectedly large caseload that "overwhelmed Plaintiff's attorney['s] schedule and

caused delay on several responses.  Ultimately the cases were adjusted to and now the

legal work of Plaintiff's attorney can go forward with and [sic] additional encumbrance."

*Id.* at 4.

Finally, Plaintiff states, as her third argument for tolling, that "there is some

dispute of who actually opened the letter and when the Plaintiff actually received notice

of the right to sue."[5]  *Id.* at 2.

None of these arguments fit within the Eleventh Circuit's excuses for equitable

tolling.  *See Jones,* 266 F. App'x at 906.  Further, the principles of equitable tolling do

not extend to what is essentially neglect on the part of Plaintiff's attorney in failing to file

the complaint on time because of an overwhelmingly large caseload or because of his fear

of Montgomery after dark.  *See Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000)

("Mere attorney negligence does not justify equitable tolling."); *Irwin v. Dep't of*

*Veterans Affairs*, 498 U.S. 89, 96 (1990) (holding that no basis existed for equitable

tolling of 30-day period from bringing employment discrimination claim against the

United States following a right-to-sue letter from the EEOC even though attorney was out

---

[5] Since Plaintiff attached the envelope with the handwritten note to her complaint, the undersigned presumes that Plaintiff submitted that item as evidence of the day she opened the Dismissal letter.  While it is strange that Plaintiff later argues – after the timeliness issue was raised by Defendant – against her own evidence about when the Dismissal was received, as discussed above, that argument is not a reason for equitable tolling, regardless of its veracity.

of the country when the letter was received by his office and he did not return until some seventeen days later).    While Plaintiff's third argument concerning notice of the Dismissal comes closest to a justifiable reason for tolling, courts have rejected similar arguments on multiple occasions, and the undersigned finds Plaintiff's argument unavailing.  *See Green,* 281 F.3d at 1234 (determining that plaintiff failed to satisfy the burden of a timely filing when plaintiff did not know exact date that his right-to-sue letter was received at his home address and plaintiff filed his complaint on the ninety-seventh day); *Martinez v. United States Sugar Corp.*, 880 F. Supp. 773, 777 (M.D. Fla. 1995), *aff'd* 77 F.3d 497 (11th Cir. 1996) (determining that plaintiff failed to satisfy the burden of a timely filing when plaintiff could not remember the date on which he received the right-to-sue letter and plaintiff filed his complaint on the ninety-fifth day); *Bell v. Eagle Motor Lines,* 693 F.2d 1086, 1087 (11th Cir. 1982) (finding ninety-day period for filing suit began to run when plaintiff's wife received the letter at their shared place of residence).  Further, "when the date of receipt of the [right-to-sue letter] is in dispute, the [Eleventh Circuit] has applied a presumption of three days receipt by mail, akin to the time period established in [Rule] 6(e)."  *Kerr v. McDonald's Corp.*, 427 F.3d 947, 953 n. 9 (11th Cir. 1999) (citing *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999)).  Thus, even if the undersigned were to accept Plaintiff's excuse concerning notice, the three-day presumption of receipt would apply, setting the time for suit ninety days after June 5, 2015, instead of June 12, 2015.  Under those circumstances, Plaintiff's filing would be ninety-nine days tardy.

Because Plaintiff filed her Title VII and ADA claims out of time without excuse, dismissal of Plaintiff's Title VII and ADA claims are appropriate.

## II.    Plaintiff's remaining claims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

When considering a Rule 12(b)(6) motion to dismiss, a court accepts the nonmovant's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984), and construes the pleading in the nonmovant's favor, *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of the pleading, the court is guided by a two-prong approach: (1) the court is not bound to accept conclusory statements of the elements of a cause of action, and (2) where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* 556 U.S. 662, 663-64 (2009).   "[A nonmovant's] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).   To survive a motion to dismiss, a pleading need not contain "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.   *Ashcroft,* 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555 (2007).

Ordinarily, in considering a motion to dismiss, the court does not consider matters presented outside the pleadings. However, "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the [nonmovant's]

claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010) (citations omitted).

In addition to Title VII and ADA claims, Plaintiff's complaint purports to assert claims under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*, and 42 U.S.C. § 1981. (Doc. 1). Defendant argues that, to the extent Plaintiff is making such claims, those claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6). (Doc. 5) at 4-12. Defendant asserts that Plaintiff's claims are vague and conclusory, and that even when assumed true, should be dismissed for failure to state a claim upon which relief can be granted. *Id.* In response to Defendant's motion to dismiss, Plaintiff cites Alabama caselaw and Alabama Rule of Civil Procedure 8(f)[6] for the argument that her complaint should be liberally construed, and thus survive the Rule 12(b)(6) motion to dismiss. (Doc. 14) at 3. Plaintiff further states:

> It should be clear, despite Defendant's constant attempts to appear oblivious of the dominant allegations and facts, that the Plaintiff has valid, viable claims that should go forward. . . . Plaintiff has demonstrated that she has disabilities, though not named, and that she was exercising her right to medical leave under the FMLA when she was terminated. These and the others are all valid claims that should go forward.

*Id.* at 4. Plaintiff does not request to amend her complaint, nor does she provide additional factual information in her response to Defendant's motion to dismiss that would bolster the bases for her claims. Instead, she relies upon the sufficiency of her original complaint to survive Defendant's Rule 12(b)(6) motion to dismiss.

---

[6] The Alabama Rules of Civil Procedure are inapplicable and Alabama caselaw is not controlling in Plaintiff's case before this court.

9

### a. Plaintiff's Family Medical Leave Act claim is insufficient to survive a Rule 12(b)(6) motion to dismiss.

Under the Family Medical Leave Act ("FMLA"), an employee has "two distinct rights: the right to take leave for the treatment of a serious health condition . . . and the right to be reinstated to the former position or an equivalent position at the end of leave." *Brown v. Montgomery Surgical Ctr.*, 2:12-cv-553-WKW, 2013 WL 1163427, at * 4 (M.D. Ala. March 20, 2013) (citing *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004) (quoting 29 U.S.C. §§ 2516(a)(1), 2614(a)). To be eligible for such rights, an employee must have been employed "(i) for at least 12 months by the employer with respect to whom leave is requested . . .  and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C.A. § 2611(2)(A)(i),(ii). When an employee feels her rights under FMLA have been violated, she can bring two types of claims: "interference claims, in which [she] asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act; and retaliation claims, in which [she] asserts that [her] employer discriminated against [her] because [s]he engaged in an activity protected by the Act." *Pereda v. Brookdale Senior Living Cmtys., Inc.*,  666 F.3d 1269, 1272 (11th Cir. 2012). "To state a claim of interference, the employee must allege that [s]he was entitled to a benefit under the FMLA and was denied that benefit." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015) (citing *Strickland v. Water Works and Sewer Bd. of Birmingham*,

239 F.3d 1199, 1206-07 (11th Cir. 2001). "To state a claim for retaliation, an employee must allege sufficient facts to plausibly suggest that: '(1) [s]he engaged in statutorily protected activity; (2) [s]he suffered an adverse employment decision; and (3) that the decision was causally related to the protected activity.'" *Id.* (citing *Strickland*, 239 F.3d at 1207).

Plaintiff's complaint references the FMLA three times. (Doc. 1) at 2, 3, and 4. First, Plaintiff states that she was a teller for Defendant "during the length of the discrimination, retaliation, wrongful termination, hostile work environment, Family Medical Leave Act violations, and Americans With Disabilities Act violations." *Id.* at 2. Second, Plaintiff states: "Plaintiff was employed by Defendant . . . during September 2012 as a teller. After being discriminated against by certain acts, including but not limited to, being terminated, being discriminated against while on FMLA or terminated while on FLMA [sic]." *Id.* at 3. Third, Plaintiff states: "The termination of Plaintiff before the expiration of her FMLA leave and without cause is a direct violation and is a discriminatory act against the Amercians With Disabilities Act of 1990, 42 U.S. Code § 12101." *Id.* at 4.

Plaintiff's response to Defendant's motion to dismiss references the FMLA twice. First, Plaintiff states:

> II.   PLAINTIFF SHOULD NOT HAVE TO REVEAL THE EXACT DISABILITY IF THE EMPLOYEE ALREADY KNOWS
>
> Plaintiff, in her complaint only refers to the disability as a shorthand version of her specific disabilities of depression, heightened anxiety, schizophrenia, etc. When the employee

> [sic] knows of the disability and has hired the employee under such restrictions, any additional mention of the specific disability should be considered redundant.  Because of such, opposing counsel merely has to turn to his/her employer/the Defendant and ask "what disability is the Plaintiff talking about?"   This inquiry is possible even without limited discovery being conducted in the case.   The claims of Plaintiff concerning disability should be interpreted as if the Defendant has informed its counsel of such disability and are thus valid claims.

(Doc. 14) at 2.   Second, Plaintiff states: "Plaintiff has demonstrated that she has disabilities, though not named, and that she was exercising her right to medical leave under the FMLA when she was terminated.  These and the others are all valid claims that should go forward."  *Id*. at 4.

The above instances, fraught with vague and conclusory statements, encompass the entirety of Plaintiff's references to FMLA.  Plaintiff's factual assertions – if any – leave much to the imagination.  Notably, Plaintiff does not assert *which* FMLA right she claims Defendant violated, leaving the court and Defendant to guess: did Defendant deny or interfere with Plaintiff's substantive rights under FMLA or did Defendant discriminate against Plaintiff because she engaged in an activity protected by FMLA?  In addition, Plaintiff does not provide any specificity regarding *when* her rights were violated.  Other than a reference to her termination date in Plaintiff's attached EEOC charge, Plaintiff fails to provide the court and Defendant with a basic timeframe of her injury.  Further, Plaintiff fails to allege that she was even qualified to receive benefits under FMLA.  That alone would be sufficient to warrant dismissal of Plaintiff's claims.  *See Shanks v. Potter*, 451 F. App'x 815, 817-18 (11th Cir. 2011) (holding that the district court properly

dismissed *pro se* plaintiff's FMLA claims for failure to state an FMLA claim because plaintiff failed to adequately allege in his complaint that he was an FMLA-eligible employee at the time he sought to take leave).  Indeed, Plaintiff's allegations are little more than "the-defendant-unlawfully-harmed-me accusations," *Iqbal*, 556 U.S. at 678 (2009), and she provides no factual basis for her claim.  As such, Plaintiff's FMLA claim is insufficient to survive a Rule 12(b)(6) motion to dismiss.[7]

### b. Plaintiff's 42 U.S.C. § 1981 claim is insufficient to survive a Rule 12(b)(6) motion to dismiss.

Forty-two U.S.C. § 1981 prohibits intentional discrimination on the basis of race in the making and enforcing of public and private contracts, including employment contracts.  *Melton v. Nat'l Dairy, LLC*, 705 F. Supp. 2d 1303, 1315 (M.D. Ala. 2010)

---

[7] Plaintiff is represented by an attorney, so Plaintiff's pleadings are not held to the less stringent standard that applies to *pro se* pleadings.  *See generally Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  However, even if the more liberal construction applicable to *pro se* pleadings, the undersigned would essentially have to rewrite Plaintiff's complaint to derive any cognizable FMLA claim.  The court is not required to engage in such practices for *pro se* litigants, much less those represented by counsel.  *Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1320 (11th Cir. 2006).

Furthermore, the court does not have to *sua sponte* invite amendment to an insufficient complaint.  *See Bankers Ins. V. Fla. Residential Prop. & Cas. Joint Underwriting*, 137 F.3d 1293, 1295 n.3 (11th Cir. 1998) (holding that the district court did not abuse its discretion by failing to *sua sponte* invite amendment where the plaintiff "never sought to amend its complaint during the months between the motion for judgment on the pleadings and the district court's order, or any time after that order").  Federal Rule of Civil Procedure 15(a) provides as follows:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Here, Plaintiff's Complaint (Doc. 1) was filed on September 12, 2015.  On October 2, 2015, Defendant filed its Motion to Dismiss (Doc. 5).  Federal Rule of Civil Procedure 15(a)(1) gives Plaintiff a clear right to amend her complaint once as a matter of course within 21 days of service of a Rule 12(b)(6) motion to dismiss.  *See Nodd v. Integrated Airline Servs.*, 41 F. Supp. 3d 1355, 1368 (S.D. Ala. 2014).  Plaintiff did not choose to amend, and instead filed a Response (Doc. 15) on January 15, 2016, to show cause why Defendant's motion to dismiss should not be granted.  Because sufficient time transpired for Plaintiff to amend or request amendment of her complaint, the undersigned is under no obligation to invite Plaintiff's amendment now.

(citing *Ferrill v. Parker Grp., Inc.,* 168 F.3d 468, 472 (11th Cir. 1999)).  Specifically, §

1981 provides as follows:

> (a) Statement of equal rights
>
> > All persons within the jurisdiction of the United States shall
> > have the same right in every State and Territory to make and
> > enforce contracts, to sue, be parties, give evidence, and to the
> > full and equal benefit of all laws and proceedings for the
> > security of persons and property as is enjoyed by white
> > citizens, and shall be subject to like punishment, pains,
> > penalties, taxes, licenses, and exactions of every kind, and to
> > no other.
>
> (b) "Make and enforce contracts" defined
>
> > For purposes of this section, the term "make and enforce
> > contracts" includes the making, performance, modification,
> > and termination of contracts, and the enjoyment of all
> > benefits, privileges, terms, and conditions of the contractual
> > relationship.
>
> (c) Protection against impairment
>
> > The rights protected by this section are protected against
> > impairment by nongovernmental discrimination and
> > impairment under color of State law.

Thus, § 1981 creates a cause of action for intentional, race-based employment

discrimination, employment retaliation, and hostile work environments. [8]   42 U.S.C. §

---

[8] Section 1981 and Title VII have the same analytical framework.  *Bryant v. Jones*, 696 F. Supp. 2d 1313, 1322 (N.D. Ga. 2010) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1015 n. 1 (11th Cir. 2001) (noting the same *prima facie* case and burden-shifting mechanisms apply to Title VII and § 1981 discrimination claims)).  A plaintiff seeking to establish intentional discrimination may do so using direct or circumstantial evidence.  *Id.* (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004)).  "The Eleventh Circuit has defined direct evidence of discrimination as evidence that reflects 'a discriminatory or retaliatory attitude correlating to the discrimination . . . complained of by the employee.'"  *Id.* at 1323 (citing *Wilson*, 376 F.3d at 1086).  To establish intentional discrimination using circumstantial evidence, a plaintiff must use the framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973).  Under that framework, the plaintiff must make a *prima facie* case of discrimination with respect to the employment action in question.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000).  If the plaintiff makes a *prima facie* showing, the defendant must then articulate a legitimate, non-discriminatory reason for

1981; *Gen. Bldg. Contractors Ass'n, Inc., v. Pennsylvania*, 458 U.S. 375 (1982); *Fuller v. SL Ala., LLC*, 56 F. Supp. 3d 1232, 1249 (M.D. Ala. 2014); *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009).

Before evaluating each of Plaintiff's potential § 1981 claims, the undersigned notes that Plaintiff's pleadings consist of wholly conclusory, generalized, and non-specific assertions that are insufficient to survive Defendant's Rule 12(b)(6) motion to dismiss. Indeed, Plaintiff's pleadings are so vague that it is unclear to the undersigned – and to Defendant – what type of § 1981 claim Plaintiff is making. Thus, Plaintiff fails to meet the pleading standards of Federal Rule of Civil Procedure 12(b)(6). While that alone would be sufficient to dismiss Plaintiff's § 1981 claims, Plaintiff also fails to state facts that could provide relief under § 1981. Accepting Plaintiff's limited factual assertions as true, it is clear from the analysis below that Plaintiff cannot maintain a § 1981 claim of any kind.

*Employment Discrimination*

To prove race-based employment discrimination, a plaintiff must show:

(1) that she is a member of a protected class;

(2) that she was qualified for the position or benefit sought;

(3) that she was subject to a materially adverse employment action; and

(4) that she suffered from a differential application of work or disciplinary rules.

---

the adverse employment action. *Id.* The burden then shifts back to the plaintiff to show defendant's legitimate, non-discriminatory reason is a pretext for unlawful discrimination. *Id.*

*Melton,* 705 F. Supp. 2d at 1317-18 (M.D. Ala. 2010) (citing *Spivey v. Beverly Enters, Inc.,* 196 F.3d 1309, 1312 (11th Cir. 1999)).  "As to element four, when the disparate treatment at issue is discipline for violation of work rules, the 'plaintiff . . . must show either (a) that [s]he did not violate the work rule, or (b) that [s]he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against [her] were more severe than those enforced against the other persons who engaged in similar misconduct.'"  *Id.* (citing *Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir. 1989).  In doing so, the plaintiff must point to someone similarly situated – but outside the protected class – who was, in fact, treated better.  *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 n.6 (11th Cir. 1998); *Coar v. Pemco Aeroplex, Inc.,* 372 F. App'x 1, 3 (11th Cir. 2010) (A proper comparator is an employee outside of the plaintiff's protected class who is similarly situated to the plaintiff "in all relevant respects.") (quoting *Wilson,* 376 F.3d at 1091 (11th Cir. 2004)).  In order to identify a viable comparator,

> the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects.  *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992); *Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir. 1985), *cert. denied*, 475 U.S. 1050 (1986).  In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.  *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir. 1994).

*Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff's complaint does not allege facts sufficient to support a § 1981 claim for employment discrimination.   As a preliminary matter, Plaintiff's employment

discrimination claim must be based on race in order to be a viable claim under § 1981. *See, e.g., Runyon v. McCrary,* 427 U.S. 160, 167 (1976) (holding that 42 U.S.C. § 1981 reaches claims of racial discrimination and does not protect against discrimination on grounds of sex, religion, or age); *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60 (1975) (holding unequivocally that 42 U.S.C. § 1981 protects against *racial* discrimination in private employment). To maintain such race-related claims, Plaintiff must show, amongst other things, that she was subject to an adverse employment action in which her employer treated similarly-situated employees outside of her protected class more favorably than she. *See Burke-Fowler v. Orange Cnty., Fla*., 447 F.3d 1319, 1323 (11th Cir. 2006). Plaintiff's complaint suggests two routes by which she was subject to an adverse employment action: (1) she was terminated; and (2) she was transferred to a different banking location.[9] Neither action is sufficient to support a § 1981 claim for employment discrimination.

Plaintiff's termination is easily eliminated as the basis for a § 1981 employment discrimination claim because Plaintiff does not assert that her termination was based on

---

[9] In order to satisfy the requirements of § 1981, Plaintiff's transfer must be a serious and material change in the terms, conditions, or privileges of employment. *See Davis v. Town of Lake Park, Fla*., 245 F.3d 1232, 1239 (11th Cir. 2001). To evaluate whether a transfer is adverse, the Eleventh Circuit has adopted an objective test, asking whether "a reasonable person in [Plaintiff's] position would view the employment action in question as adverse." *Doe v. Dekalb Co. Sch. Dist.,* 145 F.3d 1441, 1449 (11th Cir. 1998). A transfer to a different position can be "adverse" if it involves a reduction in pay, prestige, or responsibility. *Id*. at 1448. Here, Plaintiff complains only that she was "forced to a different location without any adjusted compensation." (Doc. 1) at 3. Importantly, Plaintiff is not alleging that her transfer was accompanied by a demotion, reduction in her pay, or any other adverse action. Instead, Plaintiff simply complains that she did not receive adjusted compensation, *i.e.*, *additional* pay. Without more, the transfer would not be considered an adverse employment action for purposes of a § 1981 employment discrimination claim. *See Akins v. Fulton Cty.,* 420 F.3d 1293, 1301 (11th Cir. 2005) (holding that adverse employment actions are limited to employer's conduct that negatively affects an employee's salary, title, position, or job duties). Regardless, the undersigned does not have to reach that conclusion for purposes of its analysis because Plaintiff cannot point to a similarly-situated co-worker, outside of Plaintiff's protected class, that was treated differently than Plaintiff with regards to the transfer in question.

her race.  Instead, Plaintiff indicates that she was terminated based on her *disability*. Specifically, Plaintiff states that she was "discriminated against while on FMLA or terminated while on FMLA."  (Doc. 1) at 3.  Plaintiff also states that she was terminated "before the expiration of her FMLA leave and without cause [which] is a direct violation and is a discriminatory act against the Americans With Disabilities Act . . . ."  *Id*. at 4. Plaintiff further supports this position in her response to Defendant's motion to dismiss. Plaintiff states that she "has demonstrated that she has disabilities, though not named, and that she was exercising her right to medical leave under the FMLA when she was terminated."  (Doc. 1-1) at 4.  Because Plaintiff is not asserting that her termination was based on her race, that adverse employment action cannot support a § 1981 claim for employment discrimination.

Plaintiff's transfer also fails to form the basis of a § 1981 employment discrimination claim because Plaintiff cannot point to similarly-situated co-workers, outside her protected class, who were treated more favorably than she.  Plaintiff states that her transfer was due to an argument that occurred between two Caucasian co-workers, *in which she (Plaintiff) was not involved*.  (Doc. 1-1) at 2.  Importantly, Plaintiff cannot show that Defendant treated the Caucasian co-workers more favorably than it treated Plaintiff because the Caucasian co-workers were not similarly situated to Plaintiff – *i.e.,* the co-workers were involved in the argument while Plaintiff was not.  Therefore, because Plaintiff cannot show that someone similarly situated outside of her protected class was treated differently with regards to her transfer, Plaintiff cannot sustain a § 1981 claim for employment discrimination based upon that adverse employment action.

18

*Employment Retaliation*

> To prove race-based employment retaliation, a plaintiff must show:
>
> (1) that she engaged in statutorily protected activity;
>
> (2) that she suffered a materially adverse employment action; and
>
> (3) that there was a causal relation between the protected activity and the adverse action.

*Goldsmith v. Bagby Elevator Co*., 513 F.3d 1261, 1277 (11th Cir. 2008).  As to element one, a plaintiff engages in statutorily protected activities when she complains to the EEOC or to her supervisor about illegal discrimination.  *Ambus v. AutoZoners, LLC*, 71 F. Supp. 1280, 1302 (M.D. Ala. 2014) (citing *Shannon v. Bellsouth Telecomms. Inc*., 292 F.3d 712, 715 n.2 (11th Cir. 2002) ("Title VII protects not just 'individuals who have filed formal complaints,' but also those 'who informally voice complaints to their superiors or who use their employers' internal grievance procedures.' (quoting *Rollins v. State of Fla. Dep's of Law Enf't*, 868 F.2d 397, 399 (11th Cir. 1989)).  As to element two, "[a]n action is materially adverse if it might dissuade 'a reasonable worker from making or supporting a charge of discrimination.'" *Ambus,* 71 F. Supp. at 1302 (M.D. Ala. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).   And, as to element three, "[section 1981] retaliation claims must be proved according to traditional principles of but-for causation," which "require [ ] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Cntr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).  As part of such proof, a plaintiff must show a "sufficient temporal proximity" between the

adverse employment action and the protected activity.  *Locascio v. BBDO Atlanta, Inc.*, 56 F. Supp. 3d 1356, 1370 (N.D. Ga. 2014).

Plaintiff's complaint does not allege facts that would support a § 1981 claim for employment retaliation.  In order to state such a claim, Plaintiff must show that she engaged in statutorily protected activity.  *See Goldsmith*, 513 F.3d at 1277 (11th Cir. 2008); *Ambus*, 71 F. Supp. At 1302 (M.D. Ala. 2014) (noting that a plaintiff engages in statutorily protected activities when she complains to the EEOC or to her supervisors about illegal discrimination).  She must also show that she suffered a materially adverse employment action that was causally related to her engagement in statutorily protected activity.  *Id.*; *Ambus*, 71 F. Supp. at 1302 (M.D. Ala. 2014) (an adverse employment action is materially adverse if it might dissuade a reasonable employee from making or supporting a charge of discrimination).  Plaintiff's complaint indicates that there are two possible ways that Plaintiff engaged in statutorily protected activity: (1) Plaintiff filed an EEOC complaint; and (2) Plaintiff complained of disparate treatment to her supervisor. Neither activity is sufficient to support a § 1981 claim for employment retaliation.

Plaintiff's EEOC filing cannot support a claim for employment retaliation because Plaintiff was already terminated at the time she filed the EEOC complaint.  *See* (Doc. 1-1) at 2-3.  Therefore, it would be impossible for Plaintiff to show that her termination, or any other adverse employment action, was causally related to the filing of the EEOC complaint.   As such, Plaintiff's EEOC filing cannot sustain a § 1981 claim for employment retaliation.

Plaintiff's alleged complaint to her supervisor for disparate treatment also fails to support a claim for employment retaliation. Assuming *arguendo* that Plaintiff's complaint to her supervisor was indeed based on illegal discrimination,[10] Plaintiff could show adverse employment action in two ways: (1) Plaintiff was transferred to a different banking location; and (2) Plaintiff was terminated. However, Plaintiff cannot show, under either situation, that such adverse employment action was causally related to her complaints to her supervisor.

First, as discussed in the previous section, Plaintiff's transfer was due to an argument that occurred between two Caucasian co-workers, in which she was not involved. (Doc. 1-1) at 2. Even assuming that the transfer occurred after the complaint to her supervisor,[11] Plaintiff has not established a causal link between the two events. Indeed, Plaintiff does not allege – in any of her pleadings – that the transfer was a result of her complaint to her supervisor about racially disparate treatment. Instead, Plaintiff alleges that the transfer was based on an argument between co-workers in which she did not participate. Because Plaintiff does not establish a causal link between her complaint

---

[10] It is unclear whether Plaintiff's complaint to her supervisor qualifies as statutorily protected activity because Plaintiff's complaint does not assert that she complained about illegal discrimination. Indeed, Plaintiff's complaint fails to allege that Plaintiff complained to her supervisor at all. In her complaint, Plaintiff simply states that "[m]anagement did nothing to prevent the treatment or language of the banking and branch environment." Compl. (Doc. 1) at 3. Even if Plaintiff did complain to her supervisor, it is difficult for the undersigned to decipher from that statement whether Plaintiff complained about illegal discrimination, or whether the language and treatment was simply offensive and uncomfortable to Plaintiff for other reasons. Plaintiff's only arguable showing that her complaint to her supervisor was based on discriminatory conduct appears in her attached EEOC charge. There, after listing several ways in which Plaintiff believed she was treated differently than her Caucasian co-workers, Plaintiff states that she "complained about the treatment to no avail." Pl.'s Ex. (Doc. 1-1) at 2. Thus, for purposes of determining whether Plaintiff could state a claim for employment retaliation, the undersigned will assume that Plaintiff's complaint to her supervisor was based upon illegal discrimination.

[11] Plaintiff's complaint fails to assert when the transfer occurred and when the complaint to her supervisor occurred. If the transfer occurred before the complaint, it would be impossible for the transfer to be causally related to Plaintiff's complaint.

to her supervisor and her transfer, Plaintiff cannot sustain a § 1981 claim for employment retaliation based upon her transfer.

Second, as discussed in the previous section, Plaintiff's termination was based upon her disability – not her race. As such, Plaintiff cannot causally connect her termination to her complaint to her supervisor about illegal discrimination. Therefore, Plaintiff cannot sustain a § 1981 claim for retaliation based upon her termination.

*Hostile Work Environment/Constructive Discharge*

To prove a racially hostile work environment, a plaintiff must show:

(1) that she belongs to a protected group;

(2) that she has been the subject of unwelcome harassment;

(3) that the harassment was based on her race;

(4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment and create a discriminatory abusive working environment; and

(5) that the employer was responsible for such environment under a theory of vicarious or direct liability.

*Adams v. Austal, U.S.A., L.L.C.,* 754 F.3d 1240, 1248-49 (11th Cir. 2014). To prove the fourth element, a plaintiff must show that her work environment was both subjectively and objectively hostile. *Id.* at 1249. A plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive to alter the terms or conditions of her employment, while the objective severity of harassment is judged from the perspective of a reasonable person in the plaintiff's position. *Id.* To evaluate whether a work

22

environment is objectively hostile, a court will consider the following: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris*, 510 U.S. at 23). As a result of a hostile work environment, a plaintiff who is forced into involuntary resignation could then assert a claim for constructive discharge. *Bryant*, 575 F.3d at 1298 (11th Cir. 2009) (citing *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997) ("Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.")). To establish such a claim, "[a] plaintiff must show 'the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign.'" *Id.* (citing *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994)).

Plaintiff's complaint does not allege facts that would support a claim for a racially hostile work environment. Plaintiff alleges that she was treated differently than her Caucasian co-workers because she was: (1) reprimanded for talking about President Obama while Caucasian co-workers were allowed to speak freely about politics; (2) reprimanded for humming while other Caucasian co-workers could read, play, cut coupons, and shoot rubber bands; (3) required to give a doctor's excuse when other Caucasian co-workers were not; and (4) subjected to "outward cursing, rude and

23

unwanted conversations that forced Plaintiff to be isolated in her cubicle." (Doc. 1) at 3.

Later, presumably based upon these facts, Plaintiff states:

> The hostile work environment had been created by and with full knowledge of Defendant, Auburn Bank, through its management and employees, and cause Plaintiff to be constructively discharged as Plaintiff felt it was impossible to work in the environment or is caused to work with such a burden not experienced by any of Plaintiff [sic] Caucasian co-workers, so similarly situated. Additionally, the Plaintiff now and continues [sic] to suffer a complete disruption of her household with the requirements placed on her by and with full knowledge of Defendant, Auburn Bank, Inc., through its management and employees.

*Id*. at 4.

While Plaintiff cites several instances where she believes she was treated differently than Caucasian co-workers, this disparate treatment does not rise to the objective level of severity required to sustain a § 1981 hostile work environment claim. *See generally Adams*, 754 F. 3d at 1248 (requiring a subjective and objective evaluation of a work environment to determine if it is considered hostile). To the extent that Plaintiff was exposed to cursing and rude and unwanted conversations, Plaintiff does not allege that those incidents were even based upon her race. Therefore, those incidents should not be considered for purposes of showing a racially hostile work environment. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 584 (11th Cir. 2000), abrogated on other grounds by *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53 (2006) (noting that only conduct that is based on a protected category, such as race, may be considered in a hostile work environment analysis). Plaintiff's remaining assertions include two reprimands (one for talking about politics and one for humming when Caucasian co-

workers engaged in similar behavior without reprimand) and a claim that she was required to submit doctor's excuses for work absences she incurred for her disability (while Caucasian co-workers were not required to submit doctor's excuses for their absences). To the extent that reprimands and compliance with work rules could be considered harassment at all, Plaintiff's assertions of such harassment are not severe, frequent, or pervasive enough to establish a racially hostile work environment. *See Rogers v. Equal Employment Opportunity Comm'n,* 454 F.2d 234, 237-38 (5th Cir. 1971) (holding that isolated and sporadic incidents of harassment are insufficient to create a hostile working environment); *Johnson v. Bunny Bread Co*., 646 F.2d 1250, 1257 (8th Cir. 1981) (explaining that there must be a "steady barrage of opprobrious racial comment"). *See also Adams,* 754 F.3d at 1254 (11th Cir. 2014) (African-American employee did not experience objectively hostile work environment even though he was referred to in a racially derogatory manner on some occasions, frequently saw racist graffiti, saw coworkers wear articles of clothing with the Confederate flag, and heard of a noose that was placed in the employee breakroom); *Melton*, 705 F. Supp. 2d at 1343 (M.D. Ala. 2010) (incident in which African-American employee was allegedly treated disrespectfully by shipping supervisor when supervisor demanded that he leave cooler was not so objectively severe or pervasive as to alter terms and conditions of employee's employment); and *Thompson v. City of Miami Beach, Fla*., 990 F. Supp. 2d 1335, 1341 (S.D. Fla. 2014) (holding that three incidents of racial slurs were insufficient to state a claim for a racially hostile work environment).

Finally, it is unclear whether Plaintiff is attempting to make a claim for constructive discharge based upon a hostile work environment since a claim for constructive discharge would be mutually exclusive from a claim for termination. *Bryant,* 575 F.3d at 1298 (11th Cir. 2009) ("Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.") (citing *Munday v. Waste Mgmt. of North America, Inc*., 126 F.3d 244 (4th Cir. 1997)).  However, to the extent that Plaintiff is making a claim for constructive discharge, Plaintiff's claim fails. "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." *Bryant*, 575 F.3d at 1298-99 (citing *Landgraf v. USI Film Prods.,* 968 F.2d 427, 430 (5th Cir. 1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."), *aff'd,* 511 U.S. 244 (1994); *see also Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1316–18 (11th Cir. 1989) (affirming district court's finding that plaintiffs established that they were subjected to a hostile work environment but were not constructively discharged); *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 905–06 (11th Cir. 1988) (same)).  Therefore, because the conduct of which Plaintiff complains cannot support a claim for a hostile work environment, it cannot support a claim for constructive discharge.

Accordingly, for all of the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's Motion to Dismiss (Doc. 5) be GRANTED.

Further, it is

26

ORDERED that Plaintiff is DIRECTED to file any objections to the said Recommendation **on or before April 13, 2016**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  Plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 30th day of March, 2016.


/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE